UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TTEC DIGITAL, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GO CONFIGURE, LLC,<br><br>　　　　Defendant. | Case No. 24-cv-08295-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 49 |

TTEC Digital, LLC sues Go Configure, LLC for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Pending before the Court is Defendant's motion to dismiss. Having carefully considered the parties' submissions, and with the benefit of oral argument on August 21, 2025, the Court GRANTS Defendant's motion to dismiss. The parties' agreement permits Defendant to terminate its three-year commitment for the technology provided by Plaintiff "with or without cause." So, as currently pled, Defendant did not commit contractual breach by terminating the agreement and discontinuing payments.

## BACKGROUND

**I.   COMPLAINT ALLEGATIONS**

In July 2019, Avtex Solutions, LLC and Step2 Discovery, LLC entered into a master sales agreement, which is attached as an exhibit to the complaint. (Dkt. No. 45-1 ¶ 11; Dkt. No. 45-2.)[1] Section 2(a) of the Master Sales Agreement permits the parties to "execute statements of work for particular products, designs, developments, and/or other consulting projects." (Dkt. No. 45-1 at 1.) The Master Sales Agreement permits Avtex (later acquired by Plaintiff) to terminate with

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

cause, but Step2 (whose rights were subsequently assigned to Defendant) to terminate "with or without cause":

> Either party has the right to terminate the provision of Solutions[2] pursuant to this Agreement if the other party (a) breaches or is in default of any obligation under this Agreement which has not been cured within 15 days after receipt of written notice of such default. **Client has the right to terminate the provision of Solutions pursuant to this Agreement upon 30 days prior written notice to Avtex**. Upon termination of the provision of Solutions pursuant to this Agreement (**with or without cause**): . . . . (b) Client will pay Avtex for all Solutions rendered through the effective date of termination in accordance with this Agreement.

(Dkt. No. 45-2 at 5 (emphasis added).)

In September 2020, Avtex and Step2 entered a contract assignment amendment that assigned Step2's "rights, duties, and contractual obligations" to Installations, LLC dba Go Configure. (Dkt. No. 45-1 ¶ 12; Dkt. No. 45-3 at 1.) Subsequently, a consent to assignment was entered wherein Defendant "agreed to purchase the assets of Installations." (Dkt. No. 45-1 ¶ 13; Dkt. No. 45-4.) Then, Plaintiff TTEC acquired and ultimately merged with Avtex. (Dkt. No. 45-1 ¶ 14.) As summarized by Plaintiff, "[a]fter various transactions, [Plaintiff] TTEC and [Defendant] Go Configure are now, and for the times relevant to TTEC's claims were, the parties" to the relevant agreements. (Dkt. No. 55 at 7 n.1.)

In April 2021, "pursuant to the terms of the Master Sales Agreement," Plaintiff and Defendant "entered an Amend and Replace Statement of Work," attached as an exhibit to the complaint. (Dkt. No. 45-1 ¶ 15; Dkt. No. 45-5.) In the Statement of Work, Defendant "agreed to a three-year commitment for Genesys Cloud platform services." (Dkt. No. 45-1 ¶ 16; Dkt. No. 16-3 at 1-2.) The Statement of Work identifies each product, its quantity, and its price as part of a "recurring subscription." (Dkt. No. 45-5 at 3-5.) The Statement of Work provides "use of the Genesys Cloud platform is governed by the Genesys Cloud End User Agreement" and links to that agreement. (*Id.*) By signing the Statement of Work, Defendant "agree[d] to the terms of the [End

---

[2] "Solutions" are "the product, design, development and/or other consulting services that are described in each Statement of Work . . . approved by Client and [TTEC] pursuant to section 2(a)." (Dkt. No. 45-2 at 2.)

2

User Agreement] and . . . its usages of the Genesys Cloud system shall be in accordance with and bound by the [End User Agreement]." (*Id.*)

The End User Agreement, attached as an exhibit to the complaint, "contains terms and conditions that govern . . . access to, and use of, the Genesys Cloud Service." (Dkt. No. 45-6 at 2.) It permits termination of the End User Agreement for cause under specified circumstances:

> **Termination for Cause**. Either party may terminate the Agreement upon notice and thirty (30) days opportunity to cure (if susceptible to cure) if the other party breaches a material term of the Agreement, makes an assignment for the benefit of creditors, admits in writing its inability to pay debts as they become due, files a petition in bankruptcy under the laws of the United States (or any similar laws of any state or country) or appoints a receiver, or acquiesces in the appointment of a receiver or trustee, or liquidator. Failure to pay and violation of proprietary rights obligations are material breaches.

(Dkt. No. 45-1 ¶ 23; Dkt. No. 45-5 at 5.)

Plaintiff provided Defendant the Genesys services. (*Id.* ¶ 25.) In March 2023, Defendant "sent a Notice of Termination Letter informing TTEC that they intended to terminate the Genesys Cloud subscription and payments." (*Id.* ¶ 26.) In response, Plaintiff sent Defendant "a Rejection of Termination letter" explaining "the [End User Agreement] termination provision supersedes the [Master Sales Agreement] and since Go Configure had not presented any material breaches their attempt to terminate was not permissible." (*Id.* ¶ 26.) The letter informed Defendant "if they failed to make timely payments through the end of the contract term, May 2, 2024, it would be a material breach of the [Statement of Work] and [End User Agreement]." (*Id.* ¶ 27.) Defendant "has not made any payments since the Rejection of Termination letter was sent." (*Id.* ¶ 28.)

## II.  PROCEDURAL HISTORY

Plaintiff filed suit in November 2024, then filed an amended complaint "to allege the members of each limited liability party and their citizenship." (Dkt. No. 17 at 1.) The amended complaint named "Installations, LLC doing business as Go Configure" as the defendant. (Dkt. No. 16.) Because Installations failed to appear, Plaintiff filed for entry of default, which the Clerk entered. (Dkt. Nos. 24, 25.) In March 2025, Plaintiff moved for default judgment against Installations. (Dkt. No. 28.) The following month, Installations sought to continue the default judgment motion hearing, stating it has been out of business since September 2020. (Dkt. No. 35.)

3

1    The parties stipulated to set aside the default entered against Installations and to dismiss
2    Installations from the lawsuit. (Dkt. No. 40.) In that stipulation, the parties agreed the "First
3    Amended Complaint should be amended to delete 'Installations, LLC d/b/a Go Configure,' and
4    substitute 'Go Configure, LLC' as the defendant in this action." (*Id.*)

   Plaintiff thereafter filed the operative second amended complaint, which Defendant now moves to dismiss.

## DISCUSSION

Defendant moves to dismiss all causes of action (breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment) on the ground each fails to state a claim upon which relief can be granted.

### A.  Breach of Contract

"The elements of a cause of action for breach of contract include the existence of a contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and resulting damages to the plaintiff." *J.B.B. Inv. Partners Ltd. v. Fair*, 37 Cal. App. 5th 1, 9 (2019). Defendant does not dispute the existence or validity of the contracts at issue, including the Master Sales Agreement, Statement of Work, and End User Agreement.[3] The parties dispute whether the Master Sales Agreement's or the End User Agreement's termination language controls. The Master Sales Agreement permits Defendant to terminate without cause upon 30 days written notice, while the End User Agreement only allows Defendant to terminate with cause. (*Compare* Dkt. No. 45-2 at 5, *with* Dkt. No. 45-5 at 5.)

If the Master Sale Agreement's termination provision controls, Plaintiff's breach of contract claim fails as Defendant could validly terminate the three-year Statement of Work without cause—as allegedly occurred in this case. If the End User Agreement termination controls, Plaintiff states a claim for breach of contract because, as alleged in the complaint, Defendant did not present any material breaches constituting good cause. Plaintiff insists it states

---

[3] These three agreements are incorporated by reference because "they form the basis of the complaint." *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). As such, the Court "may assume that [their] contents are true." *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

4

a claim because the Master Sales Agreement's termination clause "conflict[s] with the termination clause in the [Statement of Work] and [End User Agreement]" and those latter agreements, entered into after the Master Sales Agreement, control. (Dkt. No. 55 at 11.) *See Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022), *aff'd*, 602 U.S. 143 (2024) ("[W]hen parties enter into a second contract dealing with the same subject matter as their first contract without stating whether the second contract operates to discharge or substitute for the first contract, the two contracts must be interpreted together and the latter contract prevails to the extent they are inconsistent") (cleaned up).

Contract interpretation "is a question of law." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020). The Court's task "is to discern the mutual intent of the parties at the time the contract was formed." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 950 (9th Cir. 2002) (citing Cal. Civ. Code § 1636).[4] "The best evidence of the parties' intent is the plain language of the policy." *Id.* (citing *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (1990)). "The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation." *AIU Ins. Co.*, 51 Cal. 3d at 822 (cleaned up). "The terms of a contract must be construed in a manner that takes into account the context of the language and is consistent with the contract as a whole." *Great Minds v. Off. Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (cleaned up); *see also Van Ness v. Blue Cross of California*, 87 Cal. App. 4th 364, 372 (2001) (courts should "read a contract as a whole in order to 'give effect to every part, if reasonably practicable, each clause helping to interpret the other'") (quoting Cal. Civ. Code § 1641).

The plain language of the Statement of Work does not conflict with the Master Sales

---

[4] Plaintiff asserts the action "is governed by California law." (Dkt. No. 55 at 9 n.2.) As Defendant observes, "[t]he [Statement of Work] does not contain a governing law provision. The [End User Agreement] contains a governing law provision referring to California law. The [Master Sales Agreement's] governing law provision refers to Ohio law. . . . Plaintiff does not argue that Ohio law compels denial of Defendant's Motion or provides a different result than California law." (Dkt. No. 56 at 7.) Because neither party argues Ohio compels a different result than California law, the Court applies California law.

1   Agreement. The Statement of Work says nothing about termination. (Dkt. No. 45-5.) Indeed, it
2   says it is made "pursuant to the terms of the Master Sales Agreement." (*Id.* at 3.) Likewise, the
3   Master Sales Agreement says "[t]he provision of services covered by a Statement of Work will be
4   subject to the terms of this Agreement and the additional terms, conditions and limitations set
5   forth in the Statement of Work." (Dkt. No. 45-2 at 2.) Based on this plain and unambiguous
6   language, the Master Sales Agreement's termination provision—a term of the Master Sales
7   Agreement—applies to the Statement of Work.

8         The plain and unambiguous language of the End User Agreement also does not conflict
9   with the Master Sales Agreement. The End User Agreement provides "[e]ither party may
10  terminate *the Agreement* upon notice and thirty (30) days opportunity to cure" and sets forth
11  specific circumstances when termination is permitted. (Dkt. No. 45-6 at 5 (emphasis added).) So,
12  cause is required for either party to terminate "the Agreement." But "the Agreement" refers to the
13  End User Agreement. (*Id.* at 2 ("This Genesys Cloud End User Agreement and the documents
14  referenced herein (the 'Agreement') contain terms and conditions that govern Your access to, and
15  use of, the Genesys Cloud Service . . .").) "The Agreement" does not include the Statement of
16  Work; indeed, it expressly identifies itself as different from the Statement of Work. It says "[i]n
17  the event of a conflict between the terms of a Services Order or [Statement of Work] and the other
18  provisions of *the Agreement*, . . . the terms of the Agreement will take precedence." (*Id.* at 7
19  (emphasis added).) "The Agreement" cannot include the Statement of Work; otherwise, "the
20  Agreement will take precedence" over the Statement of Work would make no sense. So, "the
21  Agreement" does not include the Statement of Work. As a result, there is no inconsistency
22  between the Master Sales Agreement termination provision and the End User Agreement
23  termination provision. The Master Sales Agreement termination provision applies to the
24  Statement of Work and the End User Agreement termination provision applies to the End User
25  Agreement—"the Agreement" as defined in the End User Agreement. Accordingly, the Master
26  Sales Agreement termination provision, which permits termination with or without cause, still
27  applies to the Statement of Work. (Dkt. No. 45-2 at 2 ("The provision of services covered by a
28  Statement of Work will be subject to the terms of [the Master Sales Agreement] and the additional

6

terms, conditions and limitations set forth in the Statement of Work.").)

Plaintiff's reliance on *Suski* is thus misplaced. *Suski* applied the California general rule that "when parties enter into a second contract dealing with the same subject matter as their first contract without stating whether the second contract operates to discharge or substitute for the first contract, the two contracts must be interpreted together and the latter contract prevails to the extent they are inconsistent." 55 F.4th at 1230. That general rule does not apply here because the subject matter of the End User Agreement and the subject matter of the Statement of Work (which incorporates the terms of the Master Sales Agreement) are not the same. The Statement of Work identifies the ordered products, pricing, and subscription term. The End User Agreement separately governs the license for access to and use of the Genesys Cloud Services, for example, limiting the scope of use to Defendant and Defendant's affiliates, indemnification with respect to any claims that the unaltered Genesys Cloud Service infringes patents, confidentiality requirements, warranty obligations, etc.

A separate provision in the End User Agreement reinforces the conclusion that the subject matter of the End User Agreement and Statement of Work is not the same. The End User Agreement provides "[t]his Agreement constitutes the entire agreement and understanding of the parties *relating to the subject matter hereof*, superseding all prior or contemporaneous agreements, representations, promises and understandings, whether written, electronic, oral or otherwise." (Dkt. No. 45-6 at 2 (emphasis added).) If the subject matter of the two contracts is the same, then the End User Agreement supersedes the prior Statement of Work. And if the End User Agreement supersedes the Statement of Work, there remains no agreement on subscription products, pricing, or length. This nonsense result is avoided by interpreting the subject matter of the End User Agreement and Statement of Work according to their plain terms. The End User Agreement's "subject matter" is the license terms while the Statement of Work's subject matter is the provided products, pricing, and subscription term. As the subject matter of the two agreements is different, there is no inconsistency and *Suski* does not apply.

At oral argument Plaintiff insisted the End User Agreement was incorporated into the Statement of Work and therefore its termination provision applies as part of the Statement of

7

Work. But there is no language in the Statement of Work (or End User Agreement) saying as much. *See R.W.L. Enters. v. Oldcastle, Inc*., 17 Cal. App. 5th 1019, 1027–28 (2017) ("For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal") (cleaned up). Instead, the Statement of Work provides it is entered into "pursuant to the terms of the Master Sales Agreement." It also says that by entering into the Statement of Work, Defendant is agreeing to the terms of the End User Agreement and that the End User Agreement governs *the use of* the Genesys Cloud System—that is, the license to use the Genesys Cloud System. So, Defendant *agreed to* the End User Agreement by signing the Statement of Work: "[b]y signing this [Statement of Work], Client agrees to the terms of the [End User Agreement] . . . and its usages of the Genesys Cloud System shall be in accordance with and bound by the [End User Agreement]." (Dkt. No. 45-5 at 3.) And, the End User Agreement governs "access to, and the use of," the Genesys Cloud System by providing a non-exclusive license to the System. (Dkt. No. 45-6 at 2.) But the Statement of Work's plain and unambiguous language nowhere incorporates the separate End User Agreement into the Statement of Work such that an inconsistency with the Master Sale Agreement's termination clause can be manufactured.

Plaintiff's reliance on *Tulare Golf Course, LLC v. Vantage Tag, Inc.*, No. 1:21-cv-00505-JLT-SKO, 2023 WL 2587994 (E.D. Cal. Mar. 21, 2023) is likewise unavailing. There, the plaintiff entered a Service-Lease Contract with the defendant containing an arbitration provision. *Id.* at *1. The following month, the defendant requested the plaintiff "execute an additional contract entitled Extend Payment Terms Article . . . , which included the same payment price and product description" as the prior contract and no arbitration provision but rather a provision stating the plaintiff "consents to jurisdiction and venue in New York." *Id.* "Because the Payment Contract unambiguously direct[ed] parties to bring suit in a New York court, the Court conclude[d] the parties did not intend to incorporate the arbitration requirement of the Service-Lease Contract." *Id.* at *7. But in *Tulare*, unlike here, the two contracts covered the same subject matter but were inconsistent as to forum. Here, in contrast, the subject matter of each contract, while related, is different.

8

1    Plaintiff also argues the terms of the Statement of Work and End User Agreement "govern
2    this dispute since they form the more specific agreement and encompass the subject matter of this
3    lawsuit." (Dkt. No. 55 at 11-12.)  Plaintiff cites *Oracle Am., Inc. v. Procore Techs., Inc.*, No. 24-
4    CV-07457-JST, 2025 WL 1069892 (N.D. Cal. Apr. 9, 2025) in support of this argument, in which
5    the plaintiff signed an employment agreement containing an arbitration provision and a proprietary
6    information agreement containing a venue provision.  The court applied the "standard rule of
7    contract interpretation that specific terms control over general ones" to deny the defendant's
8    motion to compel arbitration of the plaintiff's claims for trade secret misappropriation.  *Id.* at *4.
9    Taking the employment and proprietary information agreements together, the court concluded "the
10   most natural reading is that claims that arise under the more specific terms of the Proprietary
11   Information Agreement are subject to that agreement's venue provision rather than the more
12   general Employment Agreement's arbitration provision." *Id.*  This principle from *Oracle* is
13   consistent with the Court's conclusion here.  *See id.*  Plaintiff's claim that Defendant's early
14   termination of the Genesys Cloud Services constituted breach relates to the length of Defendant's
15   Genesys Cloud subscription, which is set forth in the Statement of Work made "pursuant to the
16   terms of the Master Sales Agreement."  Because the Statement of Work sets forth the terms which
17   are the subject of the claim in this action, the Statement of Work—issued pursuant to the Master
18   Sales Agreement—governs the claim.  In contrast, claims about the specific license would arise
19   under the End User Agreement and would thus be subject to the End User Agreement's terms.

20                                                    ***

21   In sum, based on the second amended complaint's allegations, and the relevant contracts'
22   plain and unambiguous language, the End User Agreement's termination clause does not apply to
23   the Statement of Work; so, the breach of contract claim fails.

24   **B.    Breach of Implied Covenant of Good Faith and Fair Dealing**
25   In the second cause of action, Plaintiff alleges "Go Configure's conduct following the
26   execution of the Agreements breached the implied covenant of good faith and fair dealing." (Dkt.
27   No. 45-1 at 39.)  Defendant moves to dismiss this claim on the ground it "does not go beyond
28   stating a mere contractual breach" and thus is "superfluous and/or duplicative." (Dkt. No. 49 at

United States District Court
Northern District of California

16.)

"A breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (1990) (cleaned up). Allegations must show "that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Id.* "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* at 1395.

Here, the breach of implied covenant of good faith and fair dealing cause of action states no additional claim. The second amended complaint merely states the agreements "contain[ed] implied covenants of good faith and fair dealing" and "Go Configure's conduct following the execution of the Agreements breached [that] implied covenant." (Dkt. No. 45-1 ¶¶ 38-39.) Such conclusory allegations do not support a plausible inference Defendant breached the implied covenant of good faith and fair dealing, particularly when the Court does not know what specific conduct is at issue. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In opposition, Plaintiff contends Defendant's "conduct went beyond mere breach. It was a conscious and deliberate act which frustrated the purposes of the agreements and deprived TTEC of the benefits of the [Statement of Work] and [Marketing Services Agreement]." (Dkt. No. 55 at 14.) But the second amended complaint contains no specific factual allegations supporting this conclusory assertion. Moreover, in arguing it sufficiently alleged this claim, Plaintiff's opposition brief cites paragraphs 25-30 in the complaint. Those paragraphs all appear under the heading "Go Configure breaches its contractual commitment under the agreements." (Dkt. No. 45-1 at 5.) Because Plaintiff "rel[ies] on the same alleged acts" for its contract and implied covenant of good

10

faith and fair dealing claims, the latter claim is "superfluous" and "may be disregarded." *See Careau*, 222 Cal. App. 3d at 1395.

So, the Court GRANTS Defendant's motion to dismiss the second cause of action.

### C. Unjust Enrichment

The third cause of action alleges "[a]t the expense of TTEC, Go Configure received the benefits of TTEC's performance under the Agreements described above" and "Go Configure engaged in wasteful, misleading, deceitful, or otherwise improper conduct that would make it unjust for it to retain the above benefits without repaying said benefits to TTEC." (Dkt. No. 45-1 ¶¶ 42-43.) Defendant moves to dismiss the unjust enrichment cause of action on several grounds.

First, Defendant argues the claim is not legally cognizable because "it is unclear that an unjust enrichment claim exists under California law." (Dkt. No. 49 at 17.) California courts have reached different conclusions on this issue. *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) ("Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action."). The *ESG* court notes "this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *Id.* Given the *ESG* court's guidance, the Court declines to dismiss the unjust enrichment claim on the ground it is not legally cognizable. *See, e.g.*, *Weingand v. Harland Fin. Sols., Inc.*, No. C-11-3109 EMC, 2012 WL 3763640, at *4 (N.D. Cal. Aug. 29, 2012) (stating "a court may construe an unjust enrichment claim as an attempt to plead a cause of action giving rise to a right to restitution . . . in lieu of contract damages, such as when an express contract was procured by fraud, is unenforceable, or is ineffective or when a plaintiff chooses to seek restitution on a quasi-contract theory instead of suing in tort") (cleaned up).

Nevertheless, the Court agrees with Defendant that Plaintiff has not pled sufficient facts to support a quasi-contract claim seeking restitution. "[R]estitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). To do so, a party must allege "in that cause of action[] that the express contract is void or was rescinded." *Id.* Here, Plaintiff's unjust enrichment cause of action

does not allege the parties' express contract "is void or was rescinded," nor does Plaintiff allege any contract "was procured by fraud or is unenforceable or ineffective for some reason." *See id.* So, Plaintiff has not stated a claim for unjust enrichment.

Plaintiff may plead unjust enrichment/restitution in the alternative to breach of contract. Fed. R. Civ. P. 8(d)(2) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also Weingand*, 2012 WL 3763640, at *4 ("[E]ven though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative."). "A plaintiff may not, however, pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012). According to Plaintiff, "it is undisputed that the [Master Sales Agreement], [Statement of Work] and [End User Agreement] are valid and binding contracts." (Dkt. No. 55 at 12.) This assertion in Plaintiff's opposition brief undermines the second amended complaint's quasi-contract unjust enrichment claim.

So, the Court GRANTS Defendant's motion to dismiss the third cause of action.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss with leave to amend. The deadline to file an amended complaint is September 18, 2025, provided Plaintiff believes it can amend its claims consistent with Federal Rule of Civil Procedure 11. No new claims or defendants may be added without prior Court order. The Court sets an initial case management conference for October 1, 2025 at 2:00 p.m. via Zoom video. A joint case management conference statement is due one week in advance.

This Order disposes of Docket No. 49.

**IT IS SO ORDERED.**

Dated: August 27, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

12